UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ELIZABETH WEISS,<br><br>    Plaintiff,<br><br>v.<br><br>STEPHEN PEREZ, et al.,<br><br>    Defendants. | Case No. 22-cv-00641-BLF<br><br>**ORDER GRANTING MOTION TO DISMISS AS TO DEFENDANTS SUNSERI AND RAGLAND AND DENYING MOTION TO DISMISS AS TO ALL OTHER DEFENDANTS** |

In this case, Elizabeth Weiss, a tenured professor of physical anthropology at San Jose State University, alleges that the University has retaliated against her for her speech expressing opposition to repatriation of Native American remains. Weiss brings two claims under 42 U.S.C. § 1983 for violation of her First Amendment rights.

Now before the Court is Defendants' motion to dismiss. MTD, ECF No. 87; Reply, ECF No. 90. Plaintiff opposes the motion. Opp., ECF No. 88. The Court held a hearing on this motion on October 13, 2022. *See* ECF No. 100. The Court finds that Plaintiff has stated a claim for relief, but two of the Defendants are improper. Accordingly, Defendants' motion to dismiss is GRANTED as to Defendants Sunseri and Ragland and DENIED as to all other Defendants.

**I.   BACKGROUND**

    **A.   Weiss and Her Controversial Views on Repatriation**

Weiss is a tenured professor of physical anthropology at San Jose State University (the "University") where she specializes in osteology, the study of human skeletal remains. FAC, ECF No. 82 ¶ 19. Weiss is a critic of repatriation, which is a process through which Native American remains and cultural items are returned to tribes. *Id.* ¶ 21. In 2020, she published a book titled "Repatriation and Erasing the Past," which criticizes federal and state laws that require universities

1    and museums to return Native American remains to tribes.  *Id.*; *see* 25 U.S.C. §§ 3001–3013

2    (Native American Graves Protection and Repatriation Act or "NAGPRA"); Cal. Health & Safety

3    Code §§ 8010–8030 (California Native American Graves Protection and Repatriation Act or

4    "CalNAGPRA").  She argues in the book that these laws "undermine objective scientific inquiry

5    and violate the Establishment Clause of the United States Constitution by favoring religion over

6    science."  *Id.*  The book generated significant criticism, with about a thousand professors and

7    graduate students signing an open letter calling the book "anti-indigenous" and "racist."  *Id.* ¶ 22.

8         Weiss also authored an op-ed and tweet that received criticism.  FAC ¶¶ 62-71.  On August

9    31, 2021, she published an op-ed in The Mercury News and The East Bay Times outlining her

10   critique of AB 275, which amended CalNAGPRA.  *Id.* ¶ 62.  After the op-ed was published, the

11   University received "vitriolic emails" from academics and the public demanding discipline.  *Id.*

12   On September 18, 2021, Weiss posted a tweet to her Twitter account stating, "So happy to be back

13   with some old friends" and including a photo of her holding a skull from the University's

14   collection.  *Id.* ¶ 64.  Weiss alleges that other anthropologists and journalists, as well as the

15   Anthropology Department, had posted similar pictures in the past.  *Id.* ¶ 65.  The tweet sparked

16   substantial criticism.  Eleven days later, Defendant Del Casino published an open letter addressing

17   the tweet, *id.* ¶ 68, and in November 2021, Defendant Gonzalez posted a statement on the

18   Department website, *id.* ¶ 71.

19        Weiss alleges that she has made these repatriation arguments for several years without

20   controversy at the University.  FAC ¶ 23.  She asserts that Defendants Gonzalez and Jacobs

21   encouraged her to write her book as it would spark "lively discussions."  *Id.*  Weiss alleges that

22   following publication of her book, "Defendants responded with escalating scrutiny of her work,

23   culminating in threats and retaliatory actions."  *Id.* ¶ 24.  She names several Defendants in their

24   official capacities:  Stephen Perez (Interim President), Vincent J. Del Casino (Provost), Walt

25   Jacobs (Dean of the College of Social Sciences), Roberto Gonzalez (Chair of the Department of

26   Anthropology), Charlotte Sunseri (NAGPRA Coordinator), and Alisha Marie Ragland (Tribal

27   Liaison).  *Id.* ¶¶ 12-18.

28

### B. Alleged Retaliatory Actions

Weiss alleges that the University began a campaign of retaliation against her following her book's publication. She first points to a public meeting held by the University on December 3, 2020 to discuss the possibility of starting a Native and American Indian studies program. FAC ¶ 26. Weiss alleges that during the Q&A portion, she disagreed with panelists who advocated for having only Native American persons working in the program. *Id.* ¶ 27. She claims that on December 11, 2020, she received an email from Gonzalez asking her to speak on the phone, and, on the phone, he allegedly "told her that she should not participate in events like this again or share her views because her views may harm the feelings of junior faculty members." *Id.* ¶ 28.

Weiss next alleges that she was denied access to the Anthropology Department ListServ (the "Listserv"). FAC ¶¶ 29-39. In December 2020, Weiss responded to a Listserv email sharing the "Cite Black Authors" database claiming that because she looks for "objective knowledge," she would "encourage researchers to look for the best source material and realize that an author's ethnicity, race, or color of their skin has no actual bearing on the validity of their contribution." *Id.* ¶ 32. Soon thereafter she sent another email to the Listserv in response to the above-mentioned open letter, claiming her book was not racist. *Id.* ¶ 34. Later that day Gonzalez emailed Weiss to state it was not "appropriate to use the departmental listserv for this purpose" and that her email could "undermine the hard work" that went into creating the Listserv as an "online communication and networking infrastructure." *Id.* ¶ 35. Two days later, Gonzalez restricted Listserv access so that only he and one other professor could send emails. *Id.* ¶ 36. Weiss alleges that restriction of Listserv use was "retaliation for [her] decision to express her views on the Cite Black Authors email and to defend her book." *Id.* ¶ 38.

Weiss next claims she was improperly denied sponsorship for a speaker series. FAC ¶¶ 40-52. She alleges she emailed Gonzalez proposing an event called "Combating Cancel Culture: Why Diversity of Thought Still Matters." *Id.* ¶ 43. She wanted department sponsorship to receive benefits such as the departmental Zoom account, Listserv advertising, RSVP tracking, and a speaker honorarium. *Id.* Gonzalez declined, stating he could not commit funding or staff as there had already been a speaker series that semester. *Id.* ¶¶ 41-42, 44. Weiss claims that when she

3

offered to hold it a different semester, Gonzalez responded that she would need to comply with the Dean's Office guidelines for speaker series sponsorships. *Id.* ¶ 45. She claims that this was "pretext" to reject her event, as the guidelines were not enforced for a speaker series earlier that semester. *Id.* ¶¶ 46, 48. She informed Jacobs that she was upset the guidelines were selectively enforced and he reached out to Gonzalez. *Id.* ¶¶ 48-49. The Anthropology Department Standing Committee then adopted a policy whereby faculty may invite speakers and reserve space without sponsorship, but a request for sponsorship and staff assistance would require a departmental vote. *Id.* ¶ 50. There is no allegation that Weiss submitted her proposed series for a vote. *See* FAC.

Next, in June 2021, Jacobs hosted a Zoom webinar entitled "What to Do When a Tenured Professor is Branded a Racist." FAC ¶ 53. Gonzalez allegedly implied at the event that he would take adverse action against Weiss if she was not tenured and suggested she was "professionally incompetent." *Id.* ¶ 54. He allegedly further stated that Weiss had never talked about her writing in the classroom and that if she did, he would "have a very different approach to this." *Id.* ¶ 55. Weiss claims she "has long taught about repatriation in her classes and plans to continue to do so." *Id.* ¶ 56. She alleges that students have started to voice complaints about the views she expresses in class. *Id.* ¶ 57. After the Zoom event, Weiss requested a letter from Gonzalez and Jacobs assuring her that she would be allowed to assign her book, speak about her research in class, and access skeletal remains for research purposes. *Id.* ¶ 59. Jacobs told her that Del Casino and the Office of Faculty Affairs would not let him provide her a letter. *Id.* Jacobs further said that Gonzalez would not retract his statements and that Jacobs was receiving pressure from others to take action against her. *Id.* Counsel for Weiss then sent a letter to Del Casino, Jacobs, and Gonzalez warning of potential legal action. *Id.* ¶ 60. Weiss also thinks Gonzalez will take further action if she continues teaching her views on repatriation, such as "putting forward additional resolutions targeting her and enacting policies that limit her freedom in the classroom." *Id.* ¶ 61.

Weiss further asserts that she has lost access to the curation facility and lost some of her duties. FAC ¶¶ 72-82. Weiss has been the Collections Coordinator for the University's skeletal remains since 2004. *Id.* ¶ 72. This role involves "establishing protocols for and facilitating research of [the University's] extensive collection of skeletal remains." *Id.* ¶ 73. On October 6,

2021, the University announced Interim Presidential Directive PD-2021-03, entitled "San Jose State University's Interim Protocol for Curation Spaces in Alignment with NAGPRA, CalNAGPRA, AB275" (the "Directive"). *Id.* ¶¶ 76–77. The Directive has four provisions governing the University's Collections:

- The curation spaces at SJSU that house the Collections will be exclusively managed by the SJSU NAGPRA Coordinator and the SJSU Tribal Liaison, supplemented by student assistants who are appropriately trained and supervised to assist with the inventory process.

- The Collections will continue to remain in a locked, secure area on campus, and all access will be overseen by the SJSU NAGPRA Coordinator and the SJSU Tribal Liaison.

- Any physical access to or use of the Collections, including for research or teaching, will require written approval of the NAGPRA Coordinator and Tribal Liaison.

- Audio, video, or photographic devices are prohibited in the curation spaces, as is taking photo images or videos of human remains, funerary objects, or the boxes in which these materials are held.

*Id.* ¶ 77. On January 18, 2022, the University adopted an updated interim directive that allegedly indicates that research on the NAGPRA collection is not permitted. *Id.* ¶ 78. Weiss alleges that she is the University's only faculty member who regularly accesses skeletal remains for research. *Id.* ¶ 79. She claims that the Directive "cuts [her] out of her contractually assigned leadership responsibilities for the collection and impedes her research." *Id.* ¶ 80. Since the Directive went into place, she alleges she "has been locked out of the curational facility that she is supposed to manage." *Id.* She asserts that Defendants limited her access to remains that are not covered by NAGPRA/CalNAGPRA, which demonstrates a "retaliatory motive." *Id.* ¶ 81; *see also* ¶¶ 83-88. She claims she temporarily could not access some non-NAGPRA materials, and she believes there are additional non-NAGPRA materials to which she is not getting access. *Id.* ¶¶ 104, 112-117.

Weiss discusses a November 5, 2021 Anthropology Department Standing Committee meeting, at which Gonzalez allegedly proposed several changes to research protocols. FAC ¶¶ 89-103. First, he allegedly suggested that the role of Collections Coordinator be restructured so the coordinator would be responsible for the non-NAGPRA collection while Sunseri would be responsible for the NAGPRA collection, and that the role rotate among Department professors.

5

*Id.* ¶ 91. Weiss objected, and Gonzalez tabled the proposal. *Id.* ¶ 92. Next, Gonzalez allegedly proposed banning photography of all remains in the laboratory, and Weiss objected, claiming it would be detrimental to her research. *Id.* ¶¶ 93-96. They continued discussing, with Gonzalez and Weiss each suggesting different proposals. *Id.* ¶¶ 97-99. Gonzalez told Weiss he planned to put the two proposals up for a faculty vote, but he then sent an email on November 19, 2021 stating that he would postpone the vote. *Id.* ¶¶ 100-102.

Weiss also claims that Defendants retaliated by limiting where she could access the Carthage Collection. FAC ¶¶ 104-111. She claims she could not access the curational facility and had to use two classrooms that were "inadequate." *Id.* ¶ 105. One room is inaccessible while classes are in session. *Id.* ¶ 106. The other is the research laboratory, and she claims Department policy says remains should not stay there "for safety and security reasons." *Id.* ¶ 107. She also alleges the remains are poorly stored and organized in this location. *Id.* ¶ 108. Weiss claims that Gonzalez said he would "find a more appropriate destination for the remains," but on May 5, 2022, he said he could not find any other location on campus. *Id.* ¶¶ 110-111.

Weiss expresses concern about a new Office of Research Compliance ("ORC") policy. FAC ¶¶ 118-124. She claims that after issuing the Directive, the University began applying its ORC research approval process to human remains research. *Id.* ¶ 119. She asserts that this policy, which would require her to request approval early in the research process, was applied to "human remains research . . . in retaliation for [her] speech and in order to exercise greater control over her research." *Id.* ¶¶ 120-124. There are no allegations that Weiss has submitted a proposal to ORC. *See* FAC.

Weiss asserts that she has lost curational responsibilities and her academic standing. FAC ¶¶ 125-131. She alleges that she has lost her duties as Collections Coordinator, and she can no longer "exercise her leadership role in facilitating and coordinating access to the University's collection of remains." *Id.* ¶¶ 125-126. She says that losing access to the facility and thus her responsibilities has "harmed [her] standing and reputation among her peers." *Id.* ¶ 129.

Finally, Weiss alleges she was improperly denied placement on a thesis committee. FAC ¶¶ 132-140. She claims that there was a Department "policy" that Weiss would sit on thesis

6

committees for research involving bones. *Id.* ¶ 133. She claims that she was not assigned to sit on the committee for a graduate student whose research involved human bones. *Id.* ¶ 135. Gonzalez told her it was because the student did not request her. *Id.* ¶ 136. Weiss claims that she should have been assigned even if the student had not requested her, but she was not because of her views on repatriation. *Id.* ¶¶ 137-139. She says that she thinks she will be denied placement on thesis committees in the future, which would hurt her professional standing and reputation. *Id.* ¶ 140.

### C. This Lawsuit

On January 31, 2022, Weiss filed a lawsuit against Stephen, Ragland, Del Casino, Jacobs, Gonzalez, and Sunseri. *See* ECF No. 1. Weiss immediately filed a motion for a preliminary injunction, *see* ECF No. 8, and Defendants filed a motion to dismiss, *see* ECF No. 31. The Court granted the motion to dismiss with leave to amend in part and denied the motion for preliminary injunction. ECF No. 78.

On June 9, 2022, Weiss filed the First Amended Complaint. *See* FAC. She again brings two claims under 42 U.S.C. § 1983—the first for retaliation in violation of her First Amendment Right to Freedom of Speech, *see id.* ¶¶ 141-151; and the second for violation of her First Amendment Right to be Free from Unconstitutional Conditions, *see id.* ¶¶ 152–156. In her retaliation claim, Weiss identifies eight alleged adverse employment actions. *Id.* ¶ 145. On July 6, 2022, Defendants filed a motion to dismiss. *See* MTD.

## II. ANALYSIS

Defendants' motion to dismiss raises four arguments. *See* MTD. First, Defendants argue the case must be dismissed under Rule 12(b)(7) for failure to join a required party. *Id.* at 6-14. Second, they argue the case should be dismissed under Rule 12(b)(1) because Weiss lacks standing for her requested relief. *Id.* at 14-18. Third, Defendants argue Weiss fails to state a claim under Rule 12(b)(6). *Id.* at 18-24. Fourth, Defendants argue that all claims should be dismissed as to Defendants Sunseri and Ragland. *Id.* at 24-25.

### A. Rule 12(b)(6) – Failure to State a Claim

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation*

*Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).  When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff.  *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).  But the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citation omitted).  While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable.  *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

Defendants' arguments under Rule 12(b)(6) focus on Weiss's retaliation claim.  "[T]o state a claim against a government employer for violation of the First Amendment, an employee must show (1) that he or she engaged in protected speech; (2) that the employer took 'adverse employment action'; and (3) that his or her speech was a 'substantial or motivating factor' for the adverse employment action."  *Turner v. City & Cnty. of S.F.*, 788 F.3d 1206, 1210 (9th Cir. 2015) (quoting *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003)).  Defendants argue that three of Plaintiff's alleged adverse employment actions—curtailing her duties as Collections Coordinator, restricting access to certain remains, and storing her materials in an "inferior" space—were not actually adverse.  MTD at 19-20.  Defendants also argue that Weiss has not shown that her speech was a "substantial or motivating factor" for those actions or three others—limiting her Listserv access, requiring ORC approval of her research, and not assigning her to a thesis committee.  MTD at 20-24.

An adverse employment action is an action taken by an employer that is "reasonably likely

8

to deter employees from engaging in protected activity [under the First Amendment]." *Coszalter*, 320 F.3d at 976 (quoting *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000)). The Ninth Circuit found that actions including a change in duties, "repeated and ongoing verbal harassment and humiliation," threatened disciplinary action, and "an unpleasant work assignment," among an unwarranted disciplinary investigation and action, a criminal investigation, and a ten-day suspension from work, constituted "a severe and sustained campaign of employer retaliation." *Id.* at 976-77. It more recently determined there was retaliation based on the employer's "defamatory communications with the press" in combination with a suspension, indefinite leave, a "one-sided gag order," and several "spurious" investigations. *Greisen v. Hanken*, 925 F.3d 1097, 1114 (9th Cir. 2019). Here, Weiss's allegations include at least some of the less severe allegations identified in these lists. The Court finds that, taking all allegations in the FAC as true, it is at least plausible that the University's actions would be reasonably likely to deter an employee from engaging in protected speech.

Next, there are three ways to show that speech was a "substantial or motivating factor" for an adverse employment action: (1) proximity in time between the protected action and the adverse employment action; (2) expression of opposition to speech; or (3) false and pretextual explanations for the adverse employment action. *See Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 751-52 (9th Cir. 2001). Here, the proximity in time between Plaintiffs' book publication, op-ed, and tweet, among other things, and the alleged adverse employment actions is sufficient to plead that the speech was a "substantial or motivating factor" in the University taking those actions. There may ultimately be other, justifiable explanations for the University's actions, such as the requirement to comply with NAGPRA and CalNAGPRA, but at the motion to dismiss, the Court looks only at whether there is a plausible inference that the actions were the result of Weiss's speech and, given the proximity in time, it finds that there is. Weiss has thus adequately alleged that her speech was a "substantial or motivating factor" in the University's actions.

Defendants focus their arguments on specific adverse employment actions alleged by Weiss. On a motion to dismiss, the Court looks at the allegations collectively to see if Plaintiff has stated a claim. *See Coszalter*, 320 F.3d at 977 (holding that acts "taken together" constituted

retaliation). Defendants do not bring a motion to strike any of the allegations. Despite some of the weaknesses with individual alleged actions identified by Defendants, *see* MTD at 19-24, the Court finds that the allegations considered as a whole are sufficient to state a claim for relief.

### B. Rule 12(b)(7) – Failure to Join a Required Party

A party may move under Federal Rule of Civil Procedure 12(b)(7) to dismiss a claim for "failure to join a party under Rule 19." Rule 19 governs the joinder of "required" parties." Courts engage in a three-step process to determine whether claims must be dismissed due to the absence of a required party. First, the Court must determine if the party is a "necessary" party under Rule 19(a).[1] *Salt River Project Agr. Imp. & Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012). Second, if so, the Court must decide whether it is feasible to order joinder of the necessary party. *Id.* Finally, if joinder is not feasible, the Court must evaluate if the absent party is "indispensable" under Rule 19(b), or whether "in equity and in good conscience" the claims can proceed without the party. *Id.* "In order to determine whether Rule 19 requires the joinder of additional parties, the court may consider evidence outside of the pleadings." *Hammons v. Wells Fargo Bank, N.A.*, No. 15-cv-04897-RS, 2015 WL 9258092, at *7 (N.D. Cal. Dec. 18, 2015).

Defendants argue that the Court should dismiss the suit because the Muwekma Ohlone Tribe (the "Tribe") is a necessary and indispensable party for which joinder is not feasible. MTD at 6-14. The Court previously determined that the Tribe is a necessary and indispensable party for all claims related to the proper interpretation of CalNAGPRA, the Directive, and its implementation. *See Weiss v. Perez*, No. 22-cv-00641-BLF, 2022 WL 1471453, at *12 (N.D. Cal. May 10, 2022). Again, Defendants did not move to strike any specific allegations of adverse employment actions or any requested injunctive relief. But to the extent that any of Defendants' alleged actions are mandated by the Directive, or any of the requested injunctive relief would require a change to the Directive or require this Court to interpret the scope of CalNAGPRA, the Tribe would be a necessary and indispensable party, and the Court will not find retaliation on that

---

[1] Rule 19 used the terms "necessary" and "indispensable" prior to amendments in 2007. These changes were "stylistic only," so pre-2007 precedents still apply. *Republic of Phil. v. Pimentel*, 553 U.S. 851, 855 (2008). The Court uses the terms "necessary" and "indispensable" in light of those precedents.

1  basis or grant the requested relief.  However, at this stage the Court finds the claims plausible
2  without consideration of aspects of the claims that would require the unattainable Tribal
3  participation in this suit.

### C.     Rule 12(b)(1) – Standing

"[T]he 'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.* A plaintiff "must allege facts sufficient to show a 'real and immediate threat of repeated injury' in order to seek injunctive relief in federal court." *Freeman v. ABC Legal Servs., Inc.*, 877 F. Supp. 2d 919, 926 (N.D. Cal. 2012) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)).

Defendants argue that Weiss does not have standing for much of her requested injunctive relief.  MTD at 14-18.  They identify five of Weiss' requests for injunctive relief and argue that she "has not alleged facts suggesting she is 'likely' to suffer any of these injuries": (1) changing the conditions of her employment, (2) barring her from photography, (3) requiring a change in course content, (4) requiring departmental approval for her speaker series, and (5) barring her from thesis committees. *Id.* at 15.

Weiss alleges that Defendants will limit and restrict her ability to host a speaker series, to teach her views on repatriation, to take photographs for her research, to access an adequate research space, to conduct her research in a timely fashion, to carry out her duties, and to sit on thesis committees.  FAC ¶¶ 52, 61, 103, 111, 122-124, 126, 139.  The Court must take these allegations as true at this stage.  The Court finds that, if true, these allegations constitute a "real and immediate threat of repeated injury."  Defendants have not moved to strike any of the requested injunctive relief.  If the point comes for the Court to fashion injunctive relief, it will then determine whether each request is proper.

### D. Proper Defendants

Finally, Defendants Sunseri and Ragland argue that they should be dismissed from the action. MTD at 24-25. The Court agrees. In bringing a claim against a government official in their official capacity, a plaintiff must "name the official within the [government] entity who can appropriately respond to injunctive relief." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013). A plaintiff should name "the 'most appropriate' defendant to execute court-ordered injunctive relief" and defendants who "would have the authority to ensure execution of any order issued." *Id.* If certain defendants "are not in a position to appropriately respond to Plaintiff's requests for injunctive relief, the official capacity claims against them should be dismissed." *Balzarini v. Diaz*, No. 5:18-cv-01962-RGK (MAA), 2021 WL 6845545, at *15 (C.D. Cal. Dec. 16, 2021) (citing *Hartmann*, 707 F.3d at 1127).

Weiss sues Defendants Sunseri and Ragland in their official capacities as NAGPRA Coordinator and Tribal Liaison, respectively. The Court finds that these individual defendants are duplicative of the other named individual defendants, who include the Interim President, Provost, Dean, and Department Chair. There are no allegations that Defendants Sunseri and Ragland are policymakers or can alter the conditions of Plaintiff's employment. The Court therefore GRANTS the motion to dismiss with respect to Defendants Sunseri and Ragland.

### III. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' motion to dismiss is GRANTED as to Defendants Sunseri and Ragland and DENIED as to all other Defendants.

Dated: October 19, 2022

BETH LABSON FREEMAN
United States District Judge